THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: December 08, 2005



_____
Honorable Pamela Pepper
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re:     JULIE HARVEY,              Case No. 05-44655
           LETICIA RAMIREZ,         Case No. 05-44654
           JEFFREY MARTIN,          Case No. 05-44653
           DAVID STELMACK,         Case No. 05-44652
           CHRISTOPHER and TINA GREEN, and  Case No. 05-44651
           KENNETH JOHNSON,        Case No. 05-44650

               Debtors.               Chapter 7

_____

**DECISION AND ORDER**

_____

      The six captioned matters were filed electronically, and a Notice of Filing

went out from the clerk's office on October 17, 2005–the effective date of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

The debtors indicate that they began the process of filing these cases on October

16–under the Bankruptcy Code–and that, but for a "temporary inaccessibility" to

1

the electronic filing system, the documents would have been received by the clerk's office on October 16. Accordingly, the debtors ask this Court to conclude that these matters were constructively filed on October 16, 2005, under the Code, and for alternative relief in the event they do not prevail. The Court concludes that the above six matters were filed on October 17, 2005, under the BAPCPA, but will grant one of the three requested forms of alternative relief.

**Factual Background**

The bankruptcy court for the Eastern District of Wisconsin allows electronic filing of documents using the Case Management/Electronic Case Filing system, or "CM/ECF." Currently, the Eastern District does not make electronic case filing mandatory, but a percentage of the attorneys who practice here regularly have registered as electronic filers. Counsel for the instant debtors is one of those registered electronic filers.

According to records maintained by the Eastern District clerk's office, and affidavits filed by counsel and an assistant in his office, debtors' counsel logged onto the CM/ECF system sometime prior to 9:07 p.m. on Sunday, October 16, 2005. This would have been approximately three hours prior to the effective date of the new legislation (BAPCPA). Counsel's first case on October 16 was received by the clerk's office at 21:07:21 hours, or a little after 9:07 p.m., according to clerk's office records.

Over the course of the next three hours–between 9:07 p.m. and midnight–the clerk's office received twenty-nine (29) further petitions from debtors' counsel, for a

Case 05-44655-pp    Doc 22    Filed 12/08/05    Page 2 of 30

total of thirty (30) petitions. In some of these matters, particularly in the earlier part of the evening, counsel's office filed not only the Chapter 7 petition, but also the list of creditors and the assignment of the date for the first meeting of creditors. In the last hour of the evening, the clerk's office received seventeen (17) petitions, and in only one of these was the petition accompanied by the list of creditors and the assignment of the date for the meeting of creditors.

On October 17, 2005, the clerk's office received the petitions of the six captioned debtors. These petitions–sans creditors and the date for the meeting of creditors–were received between 00:01:04 and 00:12:06 a.m. on October 17, minutes after the effective date of the new law. In total, counsel's office filed thirty-six (36) petitions in the course of approximately 3.5 hours.

**Legal Background**

The issue of whether these cases were filed under the Bankruptcy Code or under the BAPCPA is relevant due to changes the BAPCPA has created in the way debtors file for Chapter 7 relief. Under the BAPCPA, the filing fees have changed. The documents a debtor must file have changed. In order to even be considered a debtor, a person must obtain a credit briefing, an entirely new requirement. Potential debtors must undergo a "means testing" process to determine whether they are eligible for Chapter 7–another new requirement. It does, therefore, make a difference to these debtors whether their filings occurred under the Code or under the BAPCPA. In order to make this determination, one must determine when a

3

document is "filed" in the electronic filing universe.

Electronic filing by means of CM/ECF is not new, and courts have had occasion to decide cases involving issues similar to the one raised by counsel in this matter. The following three cases bear on the issue at hand.

A.    *Berman Case*

In 2004, the Maryland district court decided <u>Berman v. Congressional Towers Limited Partnership</u>, 325 F. Supp. 590 (D. Maryland 2004). In <u>Berman</u>, the defendants argued that the plaintiff's motion for reconsideration was untimely filed. The plaintiff had filed the motion electronically. The Maryland court's procedures manual for electronic filing stated that a document was filed "at the time the Notice of Electronic Filing states it was entered." <u>Id.</u> at 592. The manual further stated,

> Thus if you begin the process of electronically filing a document on December 20th at 11:55 p.m. and do not complete it until December 21st at 12:05 a.m., the Notice of Electronic Filing will state that document was entered on December 21, 200 at 12:05 and this will be the date the document was filed. The availability of electronic filing after normal business hours and on weekends and holidays does not in any way extend any deadlines imposed by statute, rule or court order.

<u>Id.</u>

The Maryland court concluded that the plaintiff's documents were "filed" when they were entered into the court's filing system. The court also noted with disapproval that the plaintiff's counsel had waited until "nearly midnight" to file the documents. <u>Id.</u> at 593-94.

B.    *Casey Case*

4

In In re: Casey, 329 B.R. 43 (S. D. Ohio 2005), an Ohio bankruptcy court confronted an issue regarding the timing of an electronically-filed document. A creditor electronically filed an Adversary Proceeding Cover Sheet just prior to midnight on the due date. The court received the cover sheet at 12:08 a.m. the following day, and that is when it was entered on the docket. The complaint itself was received and entered on the docket at 12:14 a.m. Id. at 44. The debtor filed a motion to dismiss the adversary proceeding because it was untimely filed.

Like the Berman court, the Casey court first looked to its own electronic filing procedures. The Casey court's procedures stated:

> . . . filing a document electronically must be *completed before midnight* local time where the Court is located in order to be considered timely filed that day. (Emphasis added.)

> * * * * * * * * * * * * * * * * * * * * * * * * *

> . . . when a document has been filed through ECF, the official record is the electronic recording of the document as stored by the Court, and the filing party is bound by the document as filed. Except in the case of documents first filed conventionally, *a document filed through ECF is deemed filed at the date and time stated on the Notice of Electronic Filing from the court.*" (Emphasis added.)

Id. at 45.

Based upon these provisions, the Casey court concluded that the adversary proceeding had been untimely filed, because it was not docketed until the day after the filing deadline had expired. In reaching this conclusion, the court noted the following:

> While the Court is sympathetic to the difficulties faced by

5

practitioners learning an entirely new filing system, the facts are that the Plaintiff is a bankruptcy attorney, knows the importance of the dischargeability/objection to discharge filing deadline, agreed to be bound by the ECF Administrative Procedures, and waited until the last minute to begin electronic filing of the complaint.

Id. at 46.

    C.    *Sands Case*

Just over six months ago, the bankruptcy court for the Northern District of New York faced an electronic filing issue in In re: Sands, 328 B.R. 614 (NDNY 2005). Debtor's counsel logged on to the electronic filing system at 10:49 a.m. on the day that a foreclosure sale was scheduled on the debtor's residence. The foreclosure hearing was scheduled for 11:00 a.m.; debtor's counsel logged on eleven (11) minutes prior to the scheduled sale. Counsel did not complete the filing of the Chapter 13 petition, however, until 12:05 p.m., by which time the property had been sold to the successful bidder. Id. at 615-16.

The debtor argued that the reason the filing of the petition was not completed until 12:05 p.m.–one hour and sixteen minutes after it was begun–was because the CM/ECF system was "excruciatingly slow" on that particular morning. She argued that "the Court should not penalize her for a failure in the CM/ECF system that prevented her from timely filing her petition." Id. at 616. In considering this argument, the Sands court conducted an in-depth discussion of electronic filing.

The court first explained how electronic filing worked, pointing out that the Notice of Electronic Filing shows the time of filing, defined as "the time when the

6

filers press the 'next' tab on the warning screen and the Court's CM/ECF server receives the transmission." Id. at 617. The court then noted that neither the Bankruptcy Code (still in effect in May of 2005) nor the Federal Rules of Bankruptcy Procedure explain when, exactly, "filing" occurs. Id.

The court then pointed to several court decisions which indicated that a document is filed "when it is first placed in the actual or constructive possession of the clerk of the bankruptcy court." Id. at 618 (citations omitted). The court further observed that this same rule is applied in district courts to civil actions–complaints in civil actions are filed when they are first placed in the clerk's custody. Id. at 618. Finally, the Sands court referred to the Maryland district court's decision in Berman, and quoted that court's procedural manual. Id.

Based on all of this information, the Sands court reached the following conclusion:

> This Court concludes that the Notice of Electronic Filing creates a rebuttable presumption that a debtor files a petition at the time the Notice states it was entered. If debtor's counsel could not submit a petition because the CM/ECF system experienced technical difficulties, counsel could submit proof that the problems at the clerk's office prevented the filing of the petition. Debtors' counsel should call the clerk's office when this happens. Counsel should speak with a representative of the clerk's office and ask the representative to confirm that the CM/ECF system was not accessible or otherwise delayed, and then explain to the representative why an immediate filing is necessary. The clerk's office will make suitable arrangements to accommodate the filing. Problems occurring in counsel's office, such as a poor Internet connection or a hardware problem, will not excuse a debtor's untimely filing. It is incumbent on the debtor to show that the clerk's office was subject to a CM/ECF system failure. What debtor's counsel cannot do is simply log on to the CM/ECF system and expect

the Court to deem such a log on as the equivalent of filing. Commencing an electronic filing is not equivalent to the act of physically handing the document to a representative of the clerk's office. The clerk's office does not have possession of the petition until the debtor's counsel clicks the "next" tab and the Court's CM/ECF server receives the transmission. The CM/ECF system does not record any of the information until the debtor's counsel clicks this tab. Logging on is not enough. Otherwise, debtors' counsel could simply log on to the system and then go about the process of filling out the petition at his leisure. The Court does not want to encourage this practice.

Id. at 619.

Because the debtor provided no evidence that there had been a technical failure in the clerk's office, the Sands court concluded that the debtor's bankruptcy petition had been filed after the foreclosure sale had taken place. Id.

**Discussion**

A.  *Eastern District Electronic Filing Procedures*

The Eastern District of Wisconsin maintains CM/ECF Administrative Procedures. The current procedures are dated March 2005, and apply to documents filed or submitted on or after February 23, 2004. CM/ECF Administrative Procedures, section I(A). Section II(B) of these procedures is entitled "Effect of Electronic Filing." Subsection (1) of that section, entitled "Entry on Docket," states the following:

Electronic transmission of a document to the System, *confirmed by the Court's transmission of its Notice of Electronic Filing*, constitutes filing a document for purposes of the Federal Rules of Bankruptcy Procedure and the Rules of this Court, and constitutes entry of the document on the docket kept by the Clerk of Court under Fed. R. Bankr. P. 5003.

8

(Emphasis added.)  Section II(B)(2) further states that "[t]he official record of a document filed or scanned by the Clerk after February 23, 2004, is the electronic record of the document as stored by the Clerk."

Under the Eastern District's electronic filing procedures, then, a document is not electronically "filed" until (a) it has been electronically transmitted to the System, and (b) that transmission has been confirmed by the clerk's transmission of the Notice of Electronic Filing.  In fact, the Eastern District's definition of "filing" is not materially different from the definitions used in Maryland, Ohio and New York as discussed in the cases above.

This procedural rule, along with the cases discussed above, point to the conclusion that in the instant case, the six cases filed in the first fifteen minutes of October 17, 2005 are, in fact, governed by the newly-enacted BAPCPA.  Counsel for the debtors, however, raises a number of arguments which must be addressed.

      B.    *Arguments of Debtors' Counsel*

          1.     Factual Arguments

Debtors' counsel, an experienced bankruptcy attorney in southeastern Wisconsin, filed three affidavits in support of his motions.  On October 22, 2005, he filed his motion to extend the filing deadline "15 minutes beyond the 10-17-05 effective date of [BAPCPA] due to temporary inaccessibility of ECF filing system and for various alternative relief."  Accompanying this motion was a two-page affidavit which presented several pertinent facts.  On November 23, 2005 (after the

9

Court held a hearing on the matter), counsel filed two revised affidavits–one from himself, and one from his assistant. These two affidavits also contained a number of relevant facts.

a. *October 22, 2005 Affidavit*

In the affidavit received on October 22, counsel explained that he had extensive experience with the CM/ECF system, and was familiar with its required procedures and normal behavior. He stated that he attempted to file the six captioned matters at or about 11:00 p.m. on October 16, 2005, but that he experienced delays of up to ten minutes in excess of "normal download times" for several petitions and schedules, which resulted in the captioned cases being filed between midnight and 12:15 a.m. on October 17.

Counsel also indicated that on October 18, he received a telephone call from the Eastern District bankruptcy court clerk. In this telephone call, the clerk informed counsel that "approximately 3000 new cases were filed during the weekend of October 16, which number was far in excess of normal filings for such a period of time and potentially in excess of the court's normal processing capabilities." The clerk further advised counsel that "court officials were currently engaged in an investigation and review of the performance of the court's system and staff during the weekend prior to October 17, 2005, and that the system had not behaved as expected or intended by court staff during said period."

In addition, counsel stated that on the CM/ECF log-in page on October 16, he

10

saw advisory language indicating that "the court's ECF system would be shut down on October 17, 2005, at midnight in order to facilitate implementation of the requirements of . . . BAPCPA." In fact, however, counsel indicated that the CM/ECF system *did not* shut down at midnight as indicated in the advisory language, but continued to accept cases the way it had prior to midnight. Further, the filing fee charged for the cases counsel filed after midnight was $209, the fee charged for a Chapter 7 filing under the Bankruptcy Code, rather than the increased fee under BAPCPA. Counsel argued that this fact led him to believe that the Court had "extended" a filer's ability to file under the Bankruptcy Code, so he went ahead and filed the captioned cases.

Finally, the affidavit stated that counsel had taken on a large number of debtor clients during and shortly before the effective date of BAPCPA, and that these clients wished to file under the Bankruptcy Code.

b. *November 23, 2005 Affidavits*[1]

In the November 23 affidavits–which are almost identical–debtor's counsel and his assistant indicated that since the bankruptcy court implemented electronic filing in 2004, they had had personal experience with filing 76 individual debtor cases prior to October 16. They had attended the required training to obtain a password to the CM/ECF system. Both also expressed great familiarity with their

[1]The Court held a hearing on this matter on November 22, 2005. In attendance at the hearing were debtor's counsel, counsel for the U.S. Trustee, and the Chapter 7 panel trustee. Neither of the trustees had a position on the issue of when the petitions should be deemed filed.

Case 05-44655-pp    Doc 22    Filed 12/08/05    Page 11 of 30

own computer systems, the software that they use to accomplish electronic filing, and the various indicators on their computer system which notify users when the system isn't performing properly. Both affiants stated that, to their knowledge, they had no problems with their hardware, software, Internet connection or the Internet itself, and stated their belief that their system was performing correctly on October 16 and 17.

The affiants indicated that, before debtor's counsel logged on to the CM/ECF system sometime around 9:00 p.m. on October 16, all preparatory work on the cases they planned to file had been completed. The papers had been signed and converted into PDF files, and debtor's counsel had a credit/debit card account open so that the clerk's office could immediately collect the required fees. There was a sufficient balance in this account to cover the fees.

The affiants stated that, prior to October 16, neither of them ever had experienced "noticeable" delays while trying to electronically file a bankruptcy case. They stated that the "normal" periods for delay between the time of transmitting the final filing command and the issuance of the Notice of Filing were one minute or less. On October 16, however, the affiants indicated that they experienced "abnormal" delays in the processing of cases–nearly twenty minutes per case in some instances. Debtor's counsel indicated that he remained logged in continuously from 10:51 p.m. on October 16 to 12:23 a.m. on October 17, even though all of the documents had been transmitted by 12:06 a.m. During that time, counsel stated

that he did nothing other than electronically file previously-prepared PDF documents "as quickly as humanly possible, without significant interruption or break."

The delays the affiants experienced occurred, without exception, between "the time of submission of the initial petition . . . and the issuance of a Notice of Filing by the Court." The affiants stated that, "on information and belief, [those delays] may have been due to excessive input into the system in the weekend preceding the first effective date of the [BAPCPA], . . . ."

The affiants noted that neither the U.S. Trustee nor the Chapter 7 panel trustee had objected to counsel's motion at the November 22 hearing on the matter. They further pointed out that no creditors–all of whom had been notified of the motion–had filed any objection to the motion. Finally, the affiants indicated that the six captioned cases were "no asset" cases.

       2.     Legal Arguments

            a.     *"Extending" the "Filing Deadline"*

In his original motion, counsel asks the Court to "extend the filing deadline 15 minutes beyond the October 17, 2005 effective date of the bankruptcy reform and consumer protection act of 2005," due to what he terms the "temporary inaccessibility" of the CM/ECF system. As an initial matter, it appears that the relief requested is not appropriate.

There is no statutory or rule-based "deadline" for filing a Chapter 7

bankruptcy petition. Anyone may file for Chapter 7 relief at any time. Frequently there are external factors which act as practical deadlines for debtors–a car about to be seized, a foreclosure sale in the offing. But the timing of when a debtor chooses to file for bankruptcy relief is up to that debtor and the debtor's counsel.

Rather than a filing deadline, counsel was up against the effective date of a statute. President George W. Bush signed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2006 (Pub. L. 109-8) on April 20, 2005. The majority of the provisions of the new law became effective 180 days after enactment–October 17, 2005. This effective date was announced shortly after the President signed the legislation into law, and in the weeks immediately prior to October 17, 2005, much was made of the new legislation in the press.

BAPCPA does not prevent putative debtors from filing for Chapter 7 relief. While it does create more procedural hurdles for a debtor to jump in filing a Chapter 7 petition, and while it may result in some who would previously have filed under Chapter 7 being forced to file under Chapter 13, it does not place a "deadline" for filing on the debtor.

Rather than an extension of a "filing deadline"–which didn't exist–counsel more likely seeks a ruling that would delay implementation of BAPCPA until 12:15 a.m. on October 17, 2005. The Court has found no authority allowing it to declare that a statute which is scheduled to go into effect on a certain date does not, in fact, go into effect on that date. For that reason alone, debtor's counsel cannot prevail on

14

the motion.  Nonetheless, counsel's further arguments deserve consideration.

  b.  *Abnormal Inaccessibility*

Counsel's primary argument is that, under normal circumstances, it takes about one minute from the time he submits his electronically-filed petition to the CM/ECF system for a Notice of Filing to come back to him.  On the night of October 16, 2005, however, this period was much longer in some cases.  Counsel argues, therefore, that the longer delay between submission and receipt of notice is evidence that the system was "inaccessible."  The Court cannot agree.

As indicated above, the pendency of the new bankruptcy legislation had been much ballyhooed in the press in the weeks before October 17.  Starting at the end of the week of October 10, television and print media showed pictures of lines of putative debtors stretching outside of clerk's offices all over the country.  Thousands of debtors flocked to bankruptcy lawyers, petition preparers and courthouses, attempting to file their petitions before the new law went into effect.  Some may have believed that they would not be able to file at all after October 17, others may have believed that it would be much harder to file after that date.  Regardless of the reason, there was a well-publicized run on the bankruptcy courts nation-wide.  It was no different in the Eastern District of Wisconsin.

It may be true that it takes longer to complete electronic filing of a document if more filers are attempting to utilize the system at the same time.  The record is devoid of any evidence regarding exactly how the system works–can several filers

15

transmit their cases simultaneously?  Or is it the case that if one person is filing, the other person must wait?  No evidence has been presented on this issue.

Even if it does take longer to file when there are multiple filers transmitting simultaneously, however, that does not necessarily mean that the system is "inaccessible" or that it has failed in some way.  It is not unusual, for example, to have lines hours long at the post office the day taxes are due.  This does not mean that the postal system has failed.  Rather, it means that the system is experiencing more than normal volume.

Because the debtors brought the motion, they carry the burden of making some showing that there was a fault in the CM/ECF system.  Their initial showing was the affidavit counsel submitted on October 22, which indicated that he'd experienced longer-than-normal delays between submission and receipt of the notice.  He also indicated that the clerk of the court had told him that the system had not operated "as expected or intended," and that it's performance was being reviewed.  Neither of these pieces of information prove a system fault or failure.  Indeed, they may demonstrate the normal workings for a system that may have been more heavily burdened than usual.

At the hearing on November 22, counsel produced no further evidence.  If, indeed, there was a fault or error in the CM/ECF system, one can think of some witnesses counsel might have chosen to produce.  He could, perhaps, have called the clerk of court as a witness, to testify to the results of any system investigation.  He

16

might have called other attorneys who attempted to file on the system that night, and who experienced delays. He might have called an expert on the system, to testify to how it works—is it, as it appears to be, a system where only one person can submit documents at a time? Or can multiple filers press the transmission key at the same time, and all receive their notices at the same time? But counsel did not tender witnesses at the hearing. Instead, he offered to prepare a more detailed factual affidavit.

The Court, on its own, provided counsel with a print-out from the CM/ECF system, provided by the clerk of court, describing electronic filings that had taken place on the 15th, 16th and 17th of October. This print-out, arranged in rows and columns, lists the case number, the attorney who filed the case, the date, the time, and a description of the document filed. The Court's staff faxed the document to debtor's counsel during the November 22 hearing, and debtors' counsel referenced the document in the November 23 affidavits..

The print-out provided by the Court indicates that between the hours of 9:07 p.m. and midnight on October 16, 2005, four filers were logged onto the system. They filed a total of forty-one (41) Chapter 7 petitions in that three-hour time span. The petitions were sequential. Of those forty-one petitions, thirty (30) were filed by debtors' counsel. The petitions debtors' counsel filed were not always in sequence; the gaps in the sequence of his case numbers were filled by various of the other three electronic filers working late that night.

17

The print-out also demonstrates that debtors' counsel filed nine (9) Chapter 7 petitions between the hours of 7:49 and 9:32 p.m. on Saturday night, October 15. The case numbers for these filings were not sequential, although they were in ascending order. There were at least four (4) other filers on the system between 7:49 and 9:32 p.m. that evening.

In the November 23 affidavits, counsel eliminated any concerns about problems with his own computer systems, or doubts about his own extensive experience in both bankruptcy and electronic filing. He also eliminated concerns about whether lack of filing fees played any role in any delays. But again, he provided no further evidence of system problems than his assertion that it took him longer than usual to receive his notices of filing.

Thus, the evidence currently before the Court is as follows:

–Nothing was wrong with counsel's computers. Everything on his end functioned as it should. There was no problem with payment of required fees, which, had it existed, might have slowed down the filing process.

–It took counsel longer–sometimes significantly longer–to complete filing by received notices of filing on October 16 than it had in any of the previous 76 cases he had experience with.

–The clerk of the bankruptcy court informed counsel that some 3000 new cases had been filed the weekend of October 15-16. The record is silent regarding how many of those were filed electronically, and how many were filed

18

conventionally at the Court's after-hours drop box.

–Counsel attempted to file 36 petitions in a three-hour time span (giving himself approximately five minutes per filing to get the task done by midnight), at a time when other filers were also working on the system. He was not able to get all 36 petitions filed in that time period.

The conclusion that the Court draws from these facts is different from that drawn by debtor's counsel. The facts indicate that, at a time when massive filings were expected by the courts, predicted by the media, and discussed within the bankruptcy bar, experienced filers might have anticipated that it could take longer to file electronically. Debtor's counsel had, the previous day, filed only nine petitions, and that took approximately an hour and forty minutes. While it is not clear that counsel was on the system that entire time, one might conclude that if it took an hour and forty minutes to file nine cases, it might well take over three times that amount of time to file thirty cases. This conclusion might be even stronger if one were to file these thirty cases in the last three hours before the effective date of the new legislation.

Counsel also noted in his November 23 affidavits that he had experienced a much larger influx of debtor clients who wished to file before the effective date of the new Act. Doubtless this is true, both because of counsel's experience and because of the publicity surrounding the new Act. One might expect, considering the huge increase in filings during the first half of October, that many bankruptcy

19

practitioners experienced some increase in their client bases. And as anyone who has practiced law knows, one cannot always rely upon clients to visit an attorney in a timely and organized fashion. Lawyers often find themselves trying to do the impossible because clients have waited until the eleventh hour to seek counsel.

In this case, it appears that debtors' counsel made a great effort to get the thirty-six cases filed before the implementation of the new Act. Unfortunately, there was not enough time between the time he logged on and the time of the Act's implementation to accomplish that feat entirely. That fact, while certainly unfortunate and frustrating, does not prove that the CM/ECF system was at fault.

### c. *CM/ECF Shutdown (or Lack Thereof)*

Counsel's October 22 affidavit indicated that, when he logged on to CM/ECF on October 16, 2005, the log-in page advised filers that the CM/ECF system would be shut down at midnight on October 17 in order to facilitate implementation of the new Act. He argues that, because the system did not, in fact, shut down at midnight, but continued to accept his filings and require the pre-BAPCPA filing fee, he was led to believe that the "filing deadline" under the old law had been "extended by the court."

BAPCPA imposed many new requirements, and not just on debtors. There were many new duties and responsibilities imposed on clerk of court. Implementation of the statute required the installation of a new version of the CM/ECF operating software, called version 2.7. In order to install version 2.7, the

20

clerk's office was required to shut the system down.  The posting of the advisory

warning appears to have been a courtesy to filers, to let them know that the clerk's

office planned to conduct that shutdown at midnight.

Clearly the system did not shut down as planned.  The record is silent as to

the reason for this.  But whether or not the clerk's office shut down the system does

not impact on the date the new Act was implemented.  The new Act went into effect

the first second of October 17, regardless of whether the CM/ECF system was up

and running or not.  The fact that it was up and running, and that counsel was able

to file six further petitions after midnight, is a windfall from which his clients now

seek to benefit.  Filers were warned when they logged on that the system would

shut down at midnight, so that they could plan the evening accordingly.  Filers also

knew–or certainly should have known–that midnight was the witching hour, the

critical moment for those wishing to file under the Code.  The fact that the system

did not shut down as predicted, and even erroneously calculated the filing fee under

the old law, does not change that fact.

       d.     *Attempts to Distinguish Previous Cases*

Counsel makes numerous arguments intended to distinguish <u>Casey</u> and

<u>Sands</u> from the cases at bar.  He argues, for example, that in <u>Sands</u> counsel logged

on to the CM/ECF system only eleven minutes before the critical foreclosure sale,

whereas he logged on some three hours before the implementation date for

BAPCPA.  This is certainly true; in <u>Sands</u>, however, the debtor sought to file only

one petition, while debtors' counsel here sought to file thirty-six petitions.

Counsel argues that the debtor in <u>Sands</u> described the CM/ECF system only as "excruciatingly slow," while counsel in the instant cases has described detailed periods where the system was slower than one or two minutes between submission and receipt of notice. He also notes that additional evidence is available in these cases, such as the fact that there was nothing wrong with counsel's computer system or the Internet. He further notes that, unlike in <u>Sands</u>, the clerk's office in these cases was experiencing a huge increase in filings.

All of these distinctions are accurate, but they are distinctions without a difference. At bottom, the <u>Sands</u> court found that the debtor should have planned better in order to timely file. The same argument applies in this case–the fact that the debtors waited until the eleventh hour to seek counsel's advice and assistance has as much to do with the delayed filings as the number of cases being filed.

Counsel also points out that the <u>Casey</u> debtor argued that he ought to be considered as having filed his adversary complaint at the time he filed the cover sheet only, rather than at the time he filed the complaint. In the instant cases, counsel didn't just file a cover sheet–he filed the bankruptcy petition and supporting documents. This is true, but the relevance of this fact is not clear.

Counsel also notes that the <u>Casey</u> decision involved a procedural deadline for filing an adversary proceeding, which could be extended by the court only if a written extension request was filed before the deadline. He notes that in the

current cases, "such requirements are not applicable to an initial chapter 7 filing by a debtor." One cannot, prior to the implementation of a new piece of legislation, file a motion asking the Court to extend the date for the implementation of the statute. But while the Casey debtor could have solved his problems by filing a motion to extend time in a timely fashion, the current debtors could have solved this dilemma by seeking counsel's assistance earlier.

Oddly, counsel also argues that the Sands and Casey decisions "involved the extinguishment of critical rights of concerned parties through the passage of time." In contrast, he argues, the passage of time in the current cases determined only which law would apply. The debtors in these cases did not, counsel argues, lose their right to file bankruptcy (although two of them may have lost their right to file under Chapter 7 due to a previous discharge). Counsel argues, therefore, that because the passage of time in these cases did not extinguish the critical rights of any parties, the cases should be deemed filed under the old Code. The Court views this argument as cutting the other way–if following the Eastern District administrative policies and the reasoning in the Berman, Casey and Sands decisions does not deprive any of these debtors of a critical right, there seems little reason for the Court to attempt by judicial fiat to change the date of implementation of the BAPCPA.

Finally, debtors' counsel argues that the "unique historical context of the first comprehensive bankruptcy code revision in decades" distinguishes these cases from

the Casey and Sands decisions. He argues that the passage of a "deadline" for a comprehensive code revision is "an exceedingly rare event." He eloquently asserts that such an event "requires a convergence of battling political forces in the legislative and executive branches of our government, which has historically proven elusive, despite decades of efforts by institutional interests." He posits that granting his motion in this "rare factual context" is not likely to open a floodgate of similar litigation.

Certainly the bankruptcy laws are not overhauled once a year. But new legislation passes with great frequency, and the effective date of a particular piece of legislation is likely to crop up any day. Doubtless getting much legislation passed–bankruptcy or otherwise–requires agreement on the part of numerous forces who find agreement an alien concept. But that is a fact of our legislative system, and is an issue in many pieces of legislation which go into effect year in and year out. The fact that a law has passed, and that it may cause confusion and a paradigm shift for those it affects, does not change the fact that it is effective when it says it is effective.

e.    *Equitable Arguments*

Counsel correctly points out that none of the creditors in any of these cases have objected to the motion. From this fact, he concludes that the issue really isn't that important, an administrative detail rather than a legal issue. Again he argues that because the issue is not deemed critical enough by creditors to object, the cases

24

should be deemed filed on the 16th.

This assertion relates to an argument counsel and his assistant made in their November 23 affidavits–that "denial of the requested relief will adversely effect and place a burden upon the debtors herein by requiring them to comply with the requirements of the Act for no good reason." Counsel came to this conclusion because

> all relevant debtors would pass the 'means test' for presumptive chapter 7 eligibility under the new act in any event and had made a good faith (even if slightly tardy) attempt to file under the previous law. All concerned debtors were further advised by counsel to engage in immediate credit management briefing, as required by the act regardless of the outcome of this motion . . . proof of completion of which will be promptly filed with this court as soon as each debtor presents it to counsel.[2]

Again, the notion that the cases should be deemed filed on October 16–or that the implementation of the Act should be "extended" until 12:15 a.m. on October 17–because concluding otherwise would not unduly damage the debtors is confusing. If concluding, as seems the case, that these six matters were filed on October 17 will not unduly damage the debtors, then what is the reason to conclude otherwise? And the Court disagrees that a decision finding that the cases were filed on October 17 would be "for no good reason." In fact, following the Court's own administrative rules, the precedent cited from sister courts and higher courts, and

---

[2]A review of the docket as of December 7, 2005 indicates that of the six involved debtors, two have provided counsel with a certificate indicating that they have completed the required credit briefing, and counsel filed those certificates on December 1, 2005.

the dictates of the BAPCPA itself seems quite a sufficient reason under the American judicial system to reach this decision.

Counsel also argued in his November 23 affidavit that a decision finding that the cases were filed on October 17 would have no "precedential value," nor would it "adversely effect the administration of this court's ECF system." He bases this argument on the assertion that "the case volumes confronted by this court on the eve of the effective date of the act was a unique and isolated event which is unlikely to ever occur again." Counsel has more confidence in the immutability of legislation than the Court. The laws governing bankruptcy in the United States have changed numerous times over the years–laws were passed in 1898 (the Bankruptcy Act if 1898), 1978 (the Bankruptcy Reform Act of 1978, also known as "the Bankruptcy Code"), and 1984 (comprehensive amendments to the Code), just to list a few. Amendments are not infrequent–the BAPCPA is one example. It is not outside the realm of possibility to believe that someday, the bankruptcy laws might change yet again, causing another influx of filers.

Further, in many ways, these cases are about when a matter is deemed "filed" under this Court's CM/ECF administrative procedures. That is an issue that can arise frequently, perhaps more and more as more cases are filed electronically. In that sense, a decision finding that matters are "filed" electronically as described in the CM/ECF Administrative Procedures does have precedential value.

Counsel argues that electronic filing is efficient and cost-effective, and that

many courts have made it mandatory. In the Eastern District, electronic filing is not yet mandatory. Counsel argues that the Court has a public policy interest (not to mention a judicial administration interest) in encouraging filers to file electronically. He argues that deeming these six cases filed on October 16th is an appropriate way to give filers incentive to file electronically.

The Court disagrees. Conventional filers–those who bring or send papers to the clerk's office for file-stamping by the clerk–are well aware that there are rules governing filing time on those documents, and that those rules are often more restrictive than the electronic filing rules. Electronic filers may file on-line at any time of day or night, 24 hours a day, seven days a week. Theoretically, this is true of conventional filing as well–the clerk's office is open 24 hours a day, seven days a week. But if a conventional filer wants to hand her papers directly to clerk's office staff, and observe the papers being file-stamped, she must come to the clerk's office during regular business hours. If she files after regular business hours, she must travel to the federal building, locate the after-hours drop box, insert the papers into the stamping machine, and then deposit the file-stamped papers into the drop box. If she locates the drop box at 11:58 p.m., but doesn't find the file-stamp machine and get the papers stamped until 12:03 a.m., those papers are deemed filed at 12:03 p.m.–even though she was standing on federal property before midnight. Electronic filing is quite similar.

The Court doubts that this decision will discourage filers from registering to

file electronically. The efficiencies and conveniences of electronic filing remain, and all future filers need do is familiarize themselves with the rules governing electronic filing to avoid problems such as this.

Determination Regarding Date of Filing

For all of the reasons discussed above, the Court denies the debtors' motion to deem the six relevant matters filed under the Bankruptcy Code. These matters were filed on October 17, 2005, and as such, are governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Alternative Requests for Relief

In his original motion, counsel requested that if the Court found that the cases were filed on October 17, it consider three alternative arguments for relief. First, counsel asked the Court to extend deadlines for making the relevant filings under the BAPCPA, including filing certificates of credit briefing, payment of additional filing fees, and revision of schedules.

As an alternative to that relief, counsel asked for "an indefinite extension or wavier of credit counseling requirements until such time as the United States Trustee has certified a local agency which can fulfill such requirements without undue hardship to the debtor."

As a third alternative, counsel requested

a declaration that the bankruptcy reform and consumer protection act of 2005 is unconstitutional and in violation of the due process clause of the United States Constitution insofar as it constitutes arbitrary and capricious conduct when considered in combination with the failure of

28

the United States Trustee System to certify local agencies which are qualified for assisting the debtor in complying with credit counseling requirements. This combined government action and inaction effectively deprives the debtor of its constitutional right to seek bankruptcy relief.

Counsel's first request is a reasonable one, particularly in light of the timing of this Order. Counsel filed his motions on October 21. The Court was not able to schedule a hearing on the motions until November 22, and counsel filed supporting affidavits on November 23 and supporting memoranda on November 27. By the date of this Order, some 48 days will have passed since counsel filed his motions. Giving the debtors some additional time to make the required filings seems appropriate. Accordingly, the Court will grant the debtors an additional fifteen (15) days from the date of this Order to file the relevant items and to pay any additional fees. The Court notes, however, that the BAPCPA requires dismissal if some of the required items are not filed. If those particular items are not filed within fifteen (15) days of the date of this Order, those cases are subject to dismissal.

Counsel's second alternative request for relief must fail. As counsel for the U.S. Trustee noted at the November 22 hearing, as of the October 17, 2005 implementation date, the U.S. Trustee had certified several agencies to provide the credit briefing required by 11 U.S.C. § 109(h)(1). It is true that some of these agencies were not located in southeastern Wisconsin, or even in the state. But almost all of the certified agencies, including those located outside the state, allowed prospective debtors to obtain the required briefings on line or by telephone.

29

BAPCPA requires only that the briefings be obtained from "an approved nonprofit budget and credit counseling agency"–it does not specify where that agency must be located. While some debtors undoubtedly would be more comfortable receiving such a briefing in person, and might derive more benefit from such a briefing under that circumstance, that fact is not relevant to the question of whether approved agencies were available to provide such briefings.

Finally, counsel's third alternative request for relief also fails. As discussed above, there were agencies available to provide credit briefings, and the fact that they weren't local does not rise to the level of "arbitrary and capricious conduct," as counsel argues. Further, counsel grounds this argument in a denial of the debtors' "constitutional right to seek bankruptcy relief." While Article I of the United States Constitution gives Congress the power to establish uniform laws on bankruptcy, it does not guarantee a right to seek bankruptcy relief.

Accordingly, it is hereby ORDERED that:

The debtors' motion to extend the filing deadline for filing under the Bankruptcy Code until 12:15 a.m. on October 17, 2005 is DENIED;

The debtors are allowed an additional fifteen (15) days from the date of this Order to file any additional items and pay any additional fees required under BAPCPA.

####